# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September, 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I.(a)   PLAINTIFFS (Co-Executors)**
**HP HOOD LLC**

**(B)**   COUNTY OF RESIDENCE OF FIRST-LISTED PLAINTIFF **CHELSEA, MA**
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANT**
**EVERSTECH LLC and DENNIS EVERS individually**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **VIGO - IN**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(C)**   ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

DANIEL J. HURTEAU, ESQ.
NIXON PEABODY LLP
Omni Plaza, Suite 900, 30 South Pearl Street
Albany, NY  12207   (518) 427-2650

ATTORNEYS (IF KNOWN)

Unknown

**II.   BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III.   CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.   ORIGIN**   (PLACE AN "X" IN ONE BOX ONLY)

☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 U.S.C. 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 U.S.C. 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 152 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| | | | | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title VXI | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**VI.   CAUSE OF ACTION**   (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

**Breach of Contract / Breach of Warranty**

**VII.   REQUESTED IN COMPLAINT:**   CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23

DEMAND **$1,458,695.33**

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

**VIII.   RELATED CASE(S)**   (See instructions:)
IF ANY   **None**   Judge: _____   Docket Number _____

DATE **June 16, 2006**   SIGNATURE OF ATTORNEY OF RECORD:   _____
DANIEL J. HURTEAU, ESQ.

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

A55722.1

# UNITED STATES DISTRICT COURT

_____NORTHERN DISTRICT OF NEW YORK_____

HP HOOD LLC,

**SUMMONS IN A CIVIL CASE**

-vs-

CASE NUMBER:

EVERSTECH LLC and
DENNIS EVERS, Individually,

TO:        EVERSTECH LLC               DENNIS EVERS
                107 Southglen Drive      c/o EVERSTECH LLC
                Terre Haute, Indiana 47802   107 Southglen Drive
                                     Terre Haute, Indiana 47802

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

NIXON PEABODY LLP
Daniel J. Hurteau, Esq.
Omni Plaza, Suite 900
30 South Pearl Street
Albany, New York  12207

an answer to the complaint which is herewith served upon you, within **twenty (20)** days after service of
this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be
taken against you for the relief demanded in the complaint.  You must also file your answer with the
Clerk of this Court within a reasonable period of time after service.

_____
CLERK

_____
DATE

_____
(BY) DEPUTY CLERK

A55715.1 – C/M:  42813 / 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

HP HOOD LLC,

                                                    *Plaintiffs*,

                    - vs -

EVERSTECH LLC and
DENNIS EVERS, Individually,

                                                    *Defendants*.

**VERIFIED COMPLAINT**
**(Jury Trial Claimed)**

**CIVIL ACTION NO.**

_____

        Plaintiff, HP HOOD LLC ("Hood"), by its attorneys NIXON PEABODY LLP as and

for its complaint against defendants, respectfully alleges, upon information and belief, as

follows:

<u>**NATURE OF ACTION**</u>

        1.        Hood is a well-known manufacturer and distributor of dairy products,

including milk, cheese, cottage cheese, and sour cream.  Hood owns and operates a dairy

processing facility in Vernon, New York, which primarily produces cottage cheese and

yogurt.  One of the crucial aspects of this dairy processing facility is the wastewater

treatment system.  Hood contracted with Defendant Everstech LLC ("Everstech") to design

and implement a new wastewater treatment system based upon bioaugmentation

technology in order to be more environmentally friendly and cost efficient.  Defendant

Dennis Evers ("Evers") is Everstech's primary engineer who was the individual in charge of

the design and installation of Hood's new wastewater treatment system.  After a year of

Everstech's repeated attempts to commission the new wastewater treatment system that

Everstech designed and installed, the system never worked correctly, and Hood had to

disassemble it in April 2006.  Hood's damages as a result of the failed wastewater treatment system are approximately $1.5 million.

2.      Hood alleges that Everstech negligently designed and installed the wastewater treatment system, breached its contractual obligations to Hood, and breached its express warranties to Hood.  Hood alleges that Evers negligently designed and installed the wastewater treatment system, breached his implied warranties to Hood, and failed to obtain the proper engineering license in New York.

3.      These actions by Everstech, as well as by Evers individually, give rise to several causes of action sounding in negligence, contract, breach of express warranty, and breach of implied warranty for which Hood seeks compensatory damages.  Hood also seeks specific performance against Everstech, because Everstech has refused to provide Hood with its errors and omissions insurance coverage as mandated in the contract.

## PARTIES AND JURISDICTION

4.      Hood is a manufacturer and distributor of dairy products, including milk, cheese, cottage cheese, sour cream, and yogurt.  Hood is organized and existing under the laws of the Commonwealth of Massachusetts.  It has a principal place of business in Chelsea, Massachusetts.

5.      Everstech is a professional engineering company, specializing in engineering design services, process design engineering, project management, systems operations, and environmental consulting.  Everstech is organized and existing under the laws of the State of New York.  It has a principal place of business located at 107 Southglen Drive, Terre Haute, Indiana 47802.

6.      Evers is employed by Everstech as an engineer.  Upon information and belief, Evers resides in Indiana.

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1491.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**A.     HOOD'S DAIRY PROCESSING FACILITY IN VERNON, NEW YORK**

9.      Hood owns and operates a dairy processing facility in Vernon, New York, which primarily produces cottage cheese and sour cream (the "Vernon Facility").

10.     One of the crucial aspects of the Vernon Facility is the wastewater treatment system.  The wastewater treatment system has been historically expensive to operate and produces solid and liquid wastes which are treated extensively before being added to the municipal sewage treatment system within established parameters.

11.     In 2002, Hood desired to replace the Vernon Facility's wastewater treatment system with a system using updated technology which would be more environmentally friendly and cost efficient.

12.     During the process of investigating the various options, Everstech was recommended to Hood.  Thereafter, Hood and Everstech began discussing Everstech's bioaugmentation technology and its specialized scPROcess wastewater treatment system.

13.     Everstech completed pilot testing and issued a report by December 2002.  In 2003 and 2004, further discussions took place between Everstech and Hood regarding the potential full scale project as set forth below.

B.      EVERSTECH'S scPROcess

14.      Before Hood entered into a contract with Everstech, Everstech represented to

Hood that Everstech's scPROcess utilizes bio-cultures to treat wastewater systems with

elevated levels of chemical oxygen demand ("COD") and biological demand ("BOD").  The

bio-culture digests COD and BOD and creates a bacterial byproduct suitable for use as a

protein nutritional supplement for animal feed.

15.      As explained by Everstech to Hood, Everstech's specialized scPROcess

operates in a sequence similar to a "high-rate aeration" activated sludge process with no

sludge return.  The various proportioned mix of wastewaters enter a Balance Tank to form

a composite mix of plant wastewater, lactose permeate, and high-strength wastes not

typically treated in an existing wastewater treatment plant.  A system of pumps, valves,

and controls allow the various wastewater constituents to be proportioned into a mix that

would somewhat mimic a full-scale situation.  Facultative bio-cultures are delivered to the

Balance Tank.

16.      Composite wastewater from the Balance Tank is batch delivered to a

Facultative Tank to begin the process of biodegradation, specifically to convert lactose to

organic acids.  From the Facultative Tank, the wastewater flows to an Aeration Tank of

approximately one day hydraulic retention time where the conversion of the organic

constituents of the wastewater to protein is designed to take place.  Wastewater from the

Aeration Tank is delivered to a centrifuge for partial dewatering prior to a final drying step.

17.      In theory, Everstech's scPROcess feeds organic matter, typically present in

dairy wastewater in the form of protein, fats, and sugar (lactose), to micro-organisms as a

food source which converts the organic matter to a protein cell mass.  Oxygen, supplied via

aeration, is utilized by the micro-organisms to produce carbon dioxide and the energy

required to synthesize new cell mass.  The cell mass is a mix of liquid and suspended solids

which leaves the Aeration Tank to be dewatered by a Centrifuge then dried by a Dryer.

The Centrifuge is supposed to achieve 35% solids, and the Dryer is supposed to achieve

95% solids.  The liquid is supposed to meet pre-established effluent requirements to be

discharged in the municipal sewerage system without further treatment.

**C.     HOOD  CONTRACTS WITH EVERSTECH FOR THE scPROcess**

18.     Based upon the aforementioned representations by Everstech to Hood, on

September 9, 2004, Hood and Everstech entered into a "Contract for the Design, Project

Management, and Commissioning of Modifications to the Existing Wastewater Treatment

Plant to Convert to the scPROcess Incorporating Resource Recovery" (the "Contract").

19.     Pursuant to the terms of the Contract, Hood retained Everstech to "design,

project manage, and commission the scPROcess" at the Vernon Facility and to provide

defined services concerning the scPROcess.  See Contract Paragraph 1.

20.     The Contract includes a "mutually agreed schedule" for Everstech to

complete its work in 180 days for project implementation to Phase 1, and an additional 180

days for completion of Phase 2 including time for optimization of operation of resource

recovery yields and COD removal efficiencies.  See Contract Paragraph 6 and Appendix 4.5.

The parties also agreed that Everstech would perform its "obligations with all reasonable

expedition."  See Contract Paragraph 6.

21.     The Contract contains various express warranties by Everstech including the

following:

a.  Everstech shall perform its services with "all reasonable professional skill and care exercised by consultants or engineering firms providing similar services for the design and construction of industrial wastewater treatment facilities in the United States of America."

b.  Everstech shall complete its services "in a good and workmanlike manner."

c.  The scPROcess supplied by Everstech to the Vernon Facility shall conform to the defined specifications, be new at the time of delivery and not a prototype, be free from all defects and malfunctions in workmanship or material and shall meet the requirements of the Performance Guarantees agreed upon between the parties.

See Contract Paragraph 7.

22.  Pursuant to the terms of the Contract, Everstech agreed to undertake the following project responsibilities:

a.  Process design, plant performance, and process guarantees.

b.  Produce all construction drawings, specifications, and bid packages.

c.  Produce final process and instrumentation drawings.

d.  Assisting in preparation and submission of applications for approvals and consents.

e.  Hydraulic design, sizing and layout details for inter-process pipelines and process units and layout of ducting.

f.  Produce detailed functional specifications.

g.  Design of building and site lighting.

h.  Detailed and structural design, reinforcement schedules.

i.  Program replacement of the old effluent plant with a new one.

j.  Establish a record keeping system related to waste production and treatment, and resource recovery.

k.  Hazard and operability study.

l.  Design and specification of electrical, computer control, and data logging equipment.

m.  Site works supervision and control and overall project management.

n.  Advise on mechanical, electrical, and hydraulic commissioning of total plant.

o.  Production of test schedules and all test certificates on equipment and materials.

p.  Final commissioning.

q.  Produce final "as built" drawings and O&M manuals.

r.  Set up operation and management programs.

s.  Supervise and monitor by-product optimization, sales, and marketing.

t.  Organize seminars for Hood personnel educational program.

u.  Attend weekly project meetings and provide monthly progress reports for Hood upper management.

<u>See</u> Contract Appendix 2.

23.  Hood and Everstech also entered into a "License, Use of Technology and Service Agreement," on September 9, 2004, with terms similar to the aforementioned Contract terms.

A55709.1                                    7

**D.     EVERSTECH'S scPROcess FAILS**

24.     Hood entered into the Contract with Everstech, because Everstech agreed to design and install the scPROcess on the premise that wastewater COD could be converted to protein, dried, and sold as animal feed as a cost-effective method of wastewater treatment and disposal.  Additionally, effluent from the Everstech scPROcess was projected to be of a quality to allow discharge to the Village of Vernon's municipal sewerage system.

25.     Hood complied with all requirements of its Contract with Everstech.  For example, Hood purchased all equipment requested by Everstech, and Hood built a separate building to house the scPROcess equipment in accordance with Everstech's design suggestions and requirements.

26.     In April 2005, Everstech completed the design and installation of the scPROcess at the Vernon Facility with respect to Phase 1.  Everstech never completed Phase 2.

27.     As of April 2005 when the scPROcess was operational, the new wastewater treatment system was supposed to do the following:

     a.     Reduce Hood's operating cost by reducing condensing of permeates in Phase 1, and eliminating condensing of permeates in Phase 2.

     b.     Reduce Hood's operating cost by reducing the land spreading of permeates, slop, and sludge in Phase 1, and eliminating the land spreading of permeates, slop, and sludge in Phase 2.

     c.     Provide Hood with an income source by selling dried solids for animal feed.

      d.     Otherwise meet all specifications, requirements, and warranties set forth in the Contract.

28.     The scPROcess never met any of the aforementioned objectives set forth in the preceding paragraph.  Everstech also failed to meet the performance guarantees.  For example, the Centrifuge never achieved 35% solids, the Dryer never achieved 95% solids, and the liquid never met pre-established effluent requirements to be discharged in the municipal sewerage system without further treatment.

29.     Hood allowed Everstech an additional year after the installation and initial start-up to commission the scPROcess.

30.     During the first half of April 2006, Everstech closed its New York office and moved its operations to Indiana.

31.     The scPROcess began adversely impacting Hood's primary wastewater treatment system from the start in April 2005 which caused the primary wastewater treatment system to operate outside of the standard operating parameters.  The impact increased over time and worsened dramatically as attempts were made by Everstech to increase flows and loading to reach the Phase 1 design objectives.

32.     As of April 17, 2006, the negative impact of the scPROcess to Hood's primary wastewater treatment system had reached a critical point. Thereafter, with notice to Everstech, Hood disassembled the scPROcess.

33.     Hood has spent $1,458,695.33 on the scPROcess as detailed in the spreadsheet attached at Exhibit A.  Hood also has incurred costs to disassemble the scPROcess which have not yet been quantified.

34.     The scPROcess never worked as promised by Everstech.

35.     Hood ultimately learned that Everstech negligently designed and installed the scPROcess as a result of many deviations from the standard of professional care applicable to engineering services on a project of this type.

## COUNT I – SPECIFIC PERFORMANCE (EVERSTECH)

36.     Hood realleges paragraphs 1-35 above.

37.     The Contract contains an insurance clause which states that Everstech "shall maintain a policy of Professional Indemnity (Errors and Omissions) Insurance with Lloyds of London with limits of not less than $2,000,000 combined single limit." Everstech "shall keep the policy in force in the specified amounts for as long as the Services are being provided by [Everstech] or indirectly through their authorized designee and for the one-year warranty period following project completion." Everstech "shall furnish [Hood] with certificates evidencing all such insurance, which certificates shall contain provisions requiring the insurance carriers to give [Hood] at least thirty (30) days prior written notice of any cancellation or material change in any such policy or policies." See Contract Paragraph 21.

38.     Since April 2006, Hood has repeatedly requested that Everstech provide Hood with a copy of all applicable insurance policies concerning Everstech's errors and omissions insurance coverage mandated by the Contract.

39.     Despite these requests, Everstech has refused to provide Hood with a copy of its insurance policies concerning its errors and omissions insurance coverage mandated by the Contract.

40.     The Contract contains the following provision concerning specific performance:

Each party recognizes and agrees that the other party's remedy at law for any breach of the provisions of this Agreement may be inadequate and agrees that for breach of such provisions, such party shall, in addition to such other remedies as may be available to it at law or in equity or as provided in this Agreement, be <u>entitled to seek injunctive relief and to enforce its rights by an action for specific performance to the extent permitted by applicable law.</u> Each party hereby waives any requirement for security or the posting of any bond or other surety in connection with any temporary or permanent award of injunctive, mandatory or other equitable relief.  Nothing herein contained shall be construed as prohibiting either party from pursuing any other remedies available to it.

<u>See</u> Contract Paragraph 23 (emphasis added).

41.     Hood seeks an Order against Everstech compelling Everstech to provide Hood with a copy of all applicable insurance policies concerning Everstech's errors and omissions insurance coverage mandated by the Contract within five (5) days from the date of the Order.

## COUNT II – NEGLIGENCE AND PROFESSIONAL MALPRACTICE (EVERSTECH)

42.     Hood realleges paragraphs 1-41 above.

43.     Everstech owed Hood duties to perform its professional services in a competent and workmanlike manner, and to conform to the standard of care of a reasonable engineer in the performance of professional services.

44.     Everstech breached its duties to Hood by, among other things:

    a.     Negligently designed the scPROcess aeration system, because the system of diffused air is inadequate to supply oxygen in sufficient quantity to meet the design requirements for the overall system.

    b.     Negligently designed the scPROcess design parameter, because it has inadequate process stability.

    c.     Negligently designed the scPROcess, because it did not meet required effluent requirements.

d.     Negligently designed the scPROcess, because it did not produce the required dried sludge.

e.     Negligently designed the scPROcess;

f.     Negligently installed the scPROcess;

g.     Negligently failed to provide critical information to Hood regarding the design and construction of the scPROcess; and

h.     Negligently failed to provide Hood with accurate information regarding both its qualifications and its performance under the Contract.

45.     As a direct and proximate result of Everstech's breaches of its duties, Hood has been damaged.

### COUNT III – NEGLIGENCE AND PROFESSIONAL MALPRACTICE (EVERS)

46.     Hood realleges paragraphs 1-45 above.

47.     Evers owed Hood duties to perform its professional services in a competent and workmanlike manner, and to conform to the standard of care of a reasonable engineer in the performance of professional services.

48.     Evers breached his duties to Hood by, among other things:

a.     Negligently designed the scPROcess aeration system, because the system of diffused air is inadequate to supply oxygen in sufficient quantity to meet the design requirements for the overall system.

b.     Negligently designed the scPROcess design parameter, because it has inadequate process stability.

c.     Negligently designed the scPROcess, because it did not meet required effluent requirements.

d.      Negligently designed the scPROcess, because it did not produce the
        required dried sludge.

e.      Negligently designed the scPROcess;

f.      Negligently installed the scPROcess;

g.      Negligently failed to provide critical information to Hood regarding
        the design and construction of the scPROcess; and

h.      Negligently failed to provide Hood with accurate information
        regarding both its qualifications and its performance under the
        Contract.

49.     As a direct and proximate result of Evers' breaches of his duties, Hood has
been damaged.

## COUNT IV – BREACH OF CONTRACT (EVERSTECH)

50.     Hood realleges paragraphs 1-49 above.

51.     Hood and Everstech entered into the Contract described above, and the
Contract was supported by good and valid consideration.

52.     Hood, at all times, acted in good faith in performing its obligations under the
terms of the Contract.

53.     Everstech breached its obligations under the terms of the Contract by, among
other things, failing to properly design the scPROcess, failing to provide critical information
to Hood regarding the design and installation of the scPROcess, failing to properly install
the scPROcess, and otherwise failing to comply with the Contract.

54.     As a direct result of the breaches described above, Hood has been damaged.

## COUNT V – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (EVERSTECH)

55.     Hood realleges paragraphs 1-54 above.

56.     The Contract contains an implied covenant of good faith and fair dealing between the parties.

57.     Everstech breached this implied covenant by, among other things, failing to properly design the scPROcess, failing to provide critical information to Hood regarding the design and installation of the scPROcess, failing to properly install the scPROcess, abandoning the Vernon facility before commissioning the scPROcess, and otherwise failing to comply with the Contract.

58.     As a direct result of the breaches described above, Hood has been damaged.

## COUNT  VI – BREACH OF EXPRESS WARRANTY (EVERSTECH)

59.     Hood realleges paragraphs 1-58 above.

60.     In the Contract, Everstech specifically represented to Hood that it provided the following express warranties in connection with the services Everstech provided to Hood:

a.     Everstech shall perform its services with "all reasonable professional skill and care exercised by consultants or engineering firms providing similar services for the design and construction of industrial wastewater treatment facilities in the United States of America".

b.     Everstech shall complete its services "in a good and workmanlike matter."

c.     The scPROcess supplied by Everstech to the Vernon Facility shall conform to the defined specifications, be new at the time of delivery

> and not a prototype, be free from all defects and malfunctions in
> workmanship or material and shall meet the requirements of the
> Performance Guarantees agreed upon between the parties.

<u>See</u> Contract Paragraph 7.

61. Everstech breached its express warranties to Hood.

62. As a direct and proximate result of Everstech's breach of express warranties to Hood, Hood has been damaged.

## COUNT VII – BREACH OF IMPLIED WARRANTY (EVERS)

63. Hood realleges paragraphs 1-62 above.

64. Evers impliedly warranted that he would perform his design and engineering services with the degree of skill and care ordinarily exercised by members of the profession.

65. Evers breached his implied warranties to Hood.

66. As a direct and proximate result of Evers' breach of implied warranties to Hood, Hood has been damaged.

## COUNT VIII – VIOLATION OF N.Y. EDUC. LAW § 7202 (EVERS)

67. Hood realleges paragraphs 1-66 above.

68. Anyone who practices engineering in New York and/or holds oneself to be a licensed engineer in New York must be licensed by the State of New York pursuant to New York law.

69. Evers is not licensed in the State of New York to practice engineering in New York.

70. As a result of Evers' failure to be licensed to practice engineering in the State of New York, Hood has been damaged.

## JURY TRIAL DEMAND

Hood demands a trial by jury on all counts and issues so triable.

**WHEREFORE**, plaintiff prays for relief as follows:

(a)   On the First Count against the defendants, adjudging that this Court enter a judgment awarding Hood the following relief against Evers:  an Order against Everstech compelling Everstech to provide Hood with a copy of all applicable insurance policies concerning Everstech's errors and omissions insurance coverage mandated by the Contract within five (5) days from the date of the Order; costs; attorneys' fees; and any such further relief as this Court deems appropriate.

(b)   On the Second Count against the defendants, Hood requests that this Court enter a judgment awarding Hood the following relief against Everstech:  compensatory damages; prejudgment interest; costs; attorneys' fees; and any such further relief as this Court deems appropriate.

(c)   On the Third Count against the defendants, Hood requests that this Court enter a judgment awarding Hood the following relief against Evers:  compensatory damages; prejudgment interest; costs; attorneys' fees; and any such further relief as this Court deems appropriate.

(d)   On the Fourth Count against the defendants, Hood requests that this Court enter a judgment awarding Hood the following relief against Everstech:  compensatory damages; prejudgment interest; costs; attorneys' fees; and any such further relief as this Court deems appropriate.

(e)   On the Fifth Count against the defendants, Hood requests that this Court enter a judgment awarding Hood the following relief against Everstech:  compensatory damages; prejudgment interest; costs; attorneys' fees; and any such further relief as this Court deems appropriate.

(f)   On the Sixth Count against the defendants, Hood requests that this Court enter a judgment awarding Hood the following relief against Everstech:  compensatory damages; prejudgment interest; costs; attorneys' fees; and any such further relief as this Court deems appropriate.

(g)   On the Seventh Count against the defendants, Hood requests that this Court enter a judgment awarding Hood the following relief against Evers:  compensatory damages; prejudgment interest; costs; attorneys' fees; and any such further relief as this Court deems appropriate.

(h)   On the Eighth Count against the defendants, Hood requests that this
Court enter a judgment awarding Hood the following relief against
Evers:  compensatory damages; prejudgment interest; costs; attorneys'
fees; and any such further relief as this Court deems appropriate.

(i)   Awarding plaintiff such other and further relief as the Court deems just
and proper.

Dated:  June 16, 2006

NIXON PEABODY LLP

Daniel J. Hurteau, Esq.
Omni Plaza, Suite 900
30 South Pearl Street
Albany, NY 12207
Telephone:  (518) 427-2650
Fax:  (518) 427-2666
dhurteau@nxionpeabody.com

*Of Counsel:*
Jeffrey S. Brenner
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, RI  02903
Jbrenner@nixonpeabody.com
Telephone: (401) 454-1000
Fax:     (401) 454-1030

ATTORNEYS FOR PLAINTIFF

## VERIFICATION

**DANIEL J. HURTEAU, ESQ.**, affirms under penalties of perjury that:

He is an attorney admitted to practice in the State of New York, and is attorney for plaintiff, HP HOOD LLC. He makes this Verification because said plaintiff is not located in the county wherein he maintains his office. He has read the annexed Complaint, knows the content thereof, and the allegations contained therein are true and correct to the best of his knowledge and information.

Dated: June 16, 2006

DANIEL J. HURTEAU, ESQ.

**EXHIBIT A**

| EVERSTECH PROJECT COSTS | | |
|---|---|---|
| Capital Expenditures | $ | 1,164,816.14 |
| Utility Costs | $ | 147,383.77 |
| Chemical Costs | $ | 12,750.88 |
| Reagent Costs | $ | 24,084.00 |
| Lab Costs | $ | 3,290.00 |
| Additional Labor Costs | $ | 21,871.20 |
| Eggan Environmental Waste Hauling Co | $ | 40,395.45 |
| Demario Waste Hauling Costs | $ | 44,103.89 |
| TOTAL | $ | 1,458,695.33 |